UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ISELL L. WITHERSPOON, | ) Case No. 5:16-cv-00978 |
| Plaintiff, | ) JUDGE SARA LIOI |
| v. | ) **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| GENERAL ELECTRIC COMPANY, | ) |
| Defendant. | ) |

Now comes Plaintiff, Isell Witherspoon, by and through his undersigned counsel, and moves this Court for an Order denying, in its entirety, Defendant's Motion for Summary Judgment filed on December 21, 2016.  A Memorandum in Opposition to Defendant's Motion along with supporting exhibits is attached hereto and incorporated by reference herein.

Respectfully submitted,

*/s/ Robert A. Pecchio*
Robert A. Pecchio, Esq. (0025282)
Andrew J. Wides, Esq. (0091633)
**THE LAW OFFICES OF
THE ROBERT A. PECCHIO CO., L.P.A.**
2305 E. Aurora Rd., Suite A-1
Twinsburg, OH 44087-1940
Phone:  (330) 963-6600
Fax:  (330) 963-6650

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that the forgoing **Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment** was served via e-mail through the Court's ECF system and via electronic mail this 17th day of January, 2017 upon the following:

Ellen Toth, Esq.
Russell T Rendall, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
Ellen.toth@ogletreedeakins.com

*Attorneys for Defendant*

                                            */s/ Robert A. Pecchio*
                                            Robert A. Pecchio, Esq. (0025282)
                                            Andrew J. Wides, Esq. (0091633)
                                            **THE LAW OFFICES OF THE**
                                            **ROBERT A. PECCHIO CO., L.P.A.**

                                            *Attorneys for Plaintiff*

## **MEMORANDUM IN OPPOSITION**

**INTRODUCTION**

Plaintiff, Isell (Shawn) Witherspoon, is an African American man and was first employed by Defendant General Electric in 1995. He had been employed by Defendant for nearly two decades prior to the events of late March 2015 that gave rise to this present action. Prior to his employment with Defendant, Mr. Witherspoon served in the United States Army as an Infantry Cook from September 1987 through September 1990. Mr. Witherspoon's parents had also been employed by General Electric for over a combined sixty (60) years prior to their respective retirements. Mr. Witherspoon did not have any significant employment-related issues or complaints prior to mid/late 2004.

In late March 2015, one of Witherspoon's former co-workers, a Caucasian female, complained that he had made a series of threatening remarks in her presence. Following the complaint, Defendant conducted a willfully one-sided investigation into the facts and then terminated Witherspoon's employment based exclusively on his race. Witherspoon consistently and emphatically denied ever making any threatening remarks. As outlined below, Defendant had no legitimate evidence to support its finding that Witherspoon had intimidated and threatened a co-worker, and its threadbare "investigation" was nothing more than a pretext for terminating Witherspoon's employment based on his race.

**STATEMENT OF THE FACTS**

As mentioned above, Mr. Witherspoon did not have any significant employment related issues through his first ten years working for Defendant. On October 26, 2004 Witherspoon received a termination letter for allegedly extending breaks, poor work performance, not wearing safety glasses, and other work-related complaints. *Termination Letter attached hereto as Plaintiff's*

3

*Exhibit 1*. Although this letter was in Witherspoon's employment file, he had never seen a copy of it until Defendant produced it during the current litigation, and he had never been completely informed of the allegations and reasons for that termination. *Isell Witherspoon Depo.* at pp. 109-114. (Pertinent portions attached hereto as Plaintiff's Exhibit 2. The complete deposition transcripts of Isell Witherspoon, Robert Mullins, Michelle Kline, and April Lombardo were previously filed with the Court by the Defendant).

Despite that initial determination, the October 26, 2004 termination letter was reduced to a letter of reprimand on November 8, 2004. *Letter of Reprimand attached hereto as Plaintiff's Exhibit 3*. Witherspoon had also never seen a copy of that letter prior to its production during this litigation. *Witherspoon Depo.* at pp. 121. Witherspoon had no other employment or behavior related issues from the November 2004 Letter of Reprimand through the March 2015 accusations giving rise to this litigation. *Robert Mullins Depo.* at pp. 26. (Pertinent portions attached hereto as Plaintiff's Exhibit 4).

Prior to March 27, 2015 Witherspoon's co-worker, Michelle Kline, asked him to work as partners. *Michelle Kline Depo.* at pp. 19. (Pertinent portions attached hereto as Plaintiff's Exhibit 5). Witherspoon agreed to work with Kline, although he preferred to work alone, because he did not want to hurt her feelings *Witherspoon Depo.* at pp. 187. Throughout their time working as partners Kline started following Witherspoon to where he took his breaks, she invited him to take breaks with her in her car several times, talked about sex, problems with her boyfriend, and told Witherspoon that she "liked black guys." *Id.* at pp. 147-151. She also gave Witherspoon a kiss on his cheek for his birthday and invited him to church with her. *Kline Depo.* at pp. 29-30. Witherspoon attempted to avoid these interactions because he preferred to take breaks alone and "didn't want to be bothered." *Witherspoon Depo.* at pp. 150. Witherspoon's co-workers also took

4

notice of Kline's conduct toward Witherspoon. *Candace R. Brunswick Depo.* at pp. 11, lns. 5-18; pp. 14 lns. 11-14; pp. 16-17; pp. 22 lns. 1-10. (Pertinent portions attached hereto as Plaintiff's Exhibit 6. The complete deposition transcript was previously filed by Plaintiff).

In spite of Witherspoon's attempts to avoid the inappropriate interactions initiated by Kline, on March 27, 2015 Michelle Kline complained to GE supervisor Jill Schaade that Witherspoon made a series of threatening remarks while in her presence. *Mullins Depo.* at pp. 6-8; *Kline Depo.* at pp. 47-49. According to Kline, these remarks were supposedly made between March 24 and March 26 of 2015. *Id.* Kline alleged that Witherspoon made comments about putting her head in a plastic bin, he could cut her throat with a piece of cardboard, and he claimed that he followed her home and strangled her while she was sleeping. *Id.* at 45-48. However, no one was around when these comments were allegedly spoken, and Witherspoon emphatically denied ever saying anything at all threatening while working with Kline. *Mullins Depo.* at pp. 23-24; *Witherspoon Depo.* at pp. 160.

Following those allegations, Defendant General Electric conducted an "investigation" into the situation and ultimately decided to issue Witherspoon a letter of reprimand, which resulted in his termination. *Mullins Depo.* at 45-47; *April 2015 Letter of Reprimand attached as Exhibit 7.* That inadequate investigation mainly consisted of: meeting with Michelle Kline three times; speaking with Witherspoon once over the phone and only once in person; meeting with April Lombardo, who had no personal knowledge of the incident; video footage that showed Kline taking a break with April Lombardo; and an unrelated Letter of Reprimand from nearly eleven (11) years in the past. *Mullins Depo.* at pp. 11-13; 50-51; 55-56.

As mentioned above, Lombardo had no firsthand knowledge of the incident and knew only what Kline had told her. *April Lombardo Depo.* at pp. 26 lns. 10-24. (Pertinent portions attached

hereto as Plaintiff's Exhibit 8). She had also never had any issues with Witherspoon during the four (4) months she had worked on the floor with him, nor had she heard of any other employees who had any issues with Witherspoon prior to Kline's allegations. *Id.* at pp. 15-16. Meanwhile, Witherspoon's co-worker, Candy Brunswick, came forward of her own volition to offer insight into the situation, without Witherspoon requesting her to do so. *Brunswick Depo.* at pp. 11. Brunswick told Jill Schaade that she believed Witherspoon was "getting a raw deal" and that Michelle had been coming on to him for months. *Id.*; *Jill Schaade email attached as Exhibit 9*.

A number of Witherspoon's former co-workers have testified that they had worked with Witherspoon for many years and had never heard him talk the way Michelle Kline had alleged, and that Witherspoon has always been peaceful, respectful, and kind to fellow co-workers. *Brunswick Depo* at pp. 8-9, 19; *David Collier Deposition* at pp. 43-44 (Pertinent parts attached hereto as Plaintiff's Exhibit 10. The complete deposition transcript was previously filed by Plaintiff.); *Affidavit of Gail Johnson attached as Exhibit 11*; *Affidavit of Marcia Lee attached as Exhibit 12*. Robert Mullins even testified that Witherspoon had no motivation to make the alleged comments and that he had been aware, during the investigation, of allegations that Michelle Kline had been previously involved in a "sexual episode" at another GE facility. *Mullins Depo.* at pp. 24; 56-57.

Notwithstanding Witherspoon's co-workers' thoughts on the situation, knowledge of Kline's possible work-related sexual misconduct in the past, and Witherspoon's consistent denials, Defendant chose to ignore this important and exculpatory evidence and terminate Plaintiff Isell Witherspoon's employment on the basis of his race. Although Defendant claims that it did not hire a specific replacement for Witherspoon, following his termination Defendant hired six (6) individuals as warehouse workers between 4/13/15 and 4/25/16, all of whom were white, except

for one who was listed as "two or more races." *Defendant's Response to Plaintiff's Interrogatory No. 18 attached as Plaintiff's Exhibit 13*.

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides the standard for determining motions for summary judgment. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. (a). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.*

As the Ohio Supreme Court has stated, Civ. R. 56 is an "extraordinary" procedure that "represents a shortcut through the normal litigation process." *AAAA Ents., Inc. v. River Place Comm. Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "While the party responding to the motion may have a formidable burden of proof to overcome at trial, he does not have that burden in responding to the motion for summary judgment[.]" *Id.* The burden of establishing the appropriateness of summary judgment is on the moving party. *Anderson*, 477 U.S. 242 at 256. "[M]aterial facts in genuine dispute that may reasonably be resolved in favor of either party require denial of summary judgment in order to be properly resolved by a jury." *Jones v. Honda of Am. Mfg*., 2015 U.S. Dist. LEXIS 28682, at *17-18 (S.D. Ohio Mar. 9, 2015).

7

**LAW AND ARGUMENT**

The evidence presented by Plaintiff demonstrates how unsuitable this case is for summary judgment. The dispute on this motion centers on whether the conduct of Defendant General Electric, through its management officials, was discriminatory, defamatory, and extreme and/or outrageous within the meaning of Ohio law. Based on the genuine issues of material fact that exist in this case, Defendant's Motion for Summary Judgment must be denied in its entirety.

**A. Defendant, General Electric, terminated Plaintiff's employment based solely on his race.**

1. Plaintiff Isell Witherspoon has established a *prima facie* case of race discrimination against his former employer, General Electric.

Direct evidence of discrimination is rare, and therefore victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof. *Id.* at 18. The U.S. Sixth Circuit evaluates employment discrimination claims such as Plaintiff's using the three step analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, the Plaintiff carries the initial burden of establishing a *prima facie* case of racial discrimination. *Id*. at 802. In order to establish *prima facie* case of racial discrimination, the Plaintiff must show (1) he is a member of a protected class; (2) he was discharged; (3) he was qualified; and (4) "a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

It is clear that Plaintiff Isell Witherspoon has produced enough evidence regarding his termination to establish a *prima facie* case of employment discrimination. It is undisputed that Witherspoon is a member of a protected class and was terminated from employment with Defendant following accusations concerning his conduct made by a non-protected co-worker, Michelle Kline, in March of 2015. Witherspoon was also qualified for the position that he held

8

with Defendant, as he had been employed by Defendant for twenty (20) years and had not had a significant employment related issue in the nearly eleven (11) years preceding the allegations levied against him. *Mullins Depo.* at pp. 26.

Defendant alleges that Witherspoon cannot point to any other employee outside of his protected class that was treated differently for the same conduct, however such an employee exists in Witherspoon's former co-worker, Michelle Kline. To be similarly-situated, the individual with whom the plaintiff is comparing his treatment: 1) must have dealt with the same supervisor; 2) have been subject to the same standards; and 3) engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell,* 964 F.2d 577 at 583.

In the present case, both Witherspoon and Kline held the same positions with Defendant and reported to the same supervisors. They were both in a position where they needed management to take seriously his/her position on how certain events in the work place transpired, including whether those events actually happened at all. Kline offered only her personal position regarding how the alleged situation unfolded, and Witherspoon consistently denied any allegations whenever questioned. There was considerably more evidence supporting Witherspoon's position, however Defendant chose to believe Kline and terminate his employment. Kline is an employee in the same position as Witherspoon, however she was treated favorably because she, as a Caucasian woman, made unsupported allegations against Witherspoon, an African American man.

   2. <u>Defendant's insufficient "investigation" into the claims against Witherspoon was nothing more than a pretext for terminating Witherspoon's employment because of his race.</u>

After establishing a *prima facie* case of racial discrimination, the burden then shifts to the employer, who must articulate some "legitimate, nondiscriminatory reason for the employee's

9

rejection." *McDonnell*, 411 U.S. 792 at 802. Defendant claims that it legitimately terminated Witherspoon's employment because of violent threats he made against a co-worker. *Defendant's Motion for Summary Judgment* at pp. 11. However, Defendant never took the steps necessary to determine whether or not these serious accusations were actually true, but nevertheless terminated Witherspoon's employment. The evidence produced up to this point clearly shows that Defendant's investigation and termination of Witherspoon's employment was nothing more than a pretext for terminating Witherspoon based on his race.

Where an employer's pretext is concerned, in order to survive summary judgment the plaintiff must produce evidence that would cause a jury to reasonably doubt the employer's explanation, and if he is able to do that, his *prima facie* case is sufficient to support an inference of discrimination at trial. *Jones*, 2015 U.S. Dist. LEXIS 28682 at 39-40. Defendant attempts to analogize the case *sub judice* to the case *Forrester v. Rauland-Borg Corp.,* 556 F.Supp. 2d 850 (N.D. Ill. 2005) and the subsequent appeal *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416. However, *Forrester* is distinctly different from the current case.

In *Forrester*, the plaintiff was promoted to a production supervisor position with defendant's company in January 2000, and within seven months of that promotion there had been three separate sexual harassment allegations made against him by female employees. *Forrester*, 556 F.Supp. 2d 850 at 852. Following the first claim of harassment, a production manager and Manufacturing Vice-President met with the plaintiff about the incident and issued plaintiff a warning. *Id.* In July 2000, another female employee filed a sexual harassment complaint against plaintiff, which included plaintiff's sending of three sexually graphic emails and his admission to sending those emails. *Id*. Upon receipt of that complaint defendant investigated the incidents, met with plaintiff, and during that investigation discovered a third, previously unreported, sexual

harassment claim against the plaintiff. *Id.* Defendant then terminated plaintiff based on repeated violations of its sexual harassment policy. *Id.* at 853.

In the case currently before the Court, Witherspoon had not been accused of any repeated violations. In fact, the only employment related complaint in his file was an unrelated letter of reprimand from over a decade in the past, of which he was unaware. Unlike *Forrester*, Witherspoon did not admit to any of the accusations against him, and nothing was produced to support or prove the remarks that he allegedly made. Defendant's HR Manager Bob Mullins also stated that he found Witherspoon would have had no motivation to make the remarks that he had been accused of making. *Mullins Depo.* at 24-25. Mullins even testified that he was aware of Kline's possible prior sexual misconduct at another GE facility, however this knowledge was given no weight in the decision making process. *Id.* at 56-57.

Additionally, in his deposition, after being asked why he thought his termination was based on race, Witherspoon stated "[b]ecause if a black woman would have went in there with the same story, the outcome wouldn't have been the same." *Witherspoon Depo*. at 49. Witherspoon was conveying that if an African American woman would have made those same allegations, Defendant's decision to terminate his employment would have been different because her credibility would have been given less weight because of her race. Witherspoon also referenced a different situation where he believes a black woman, Stacy Davis, was treated differently than a similarly situated white employee. *Id.* at 50-51.

Witherspoon further testified that he had heard numerous stories from his parents about the culture of Defendant's predominantly white facilities, and "what to do and what not to do" to keep your employment as a young African American man. *Id.* at 84-86. He also testified to knowledge about another situation at Defendant's Ravenna Lamp plant where an African American man,

11

"Robinson," was treated less favorably than a Caucasian woman for the same conduct. *Witherspoon Depo.* at 86-87. During his deposition, David Collier also testified regarding the general working environment for minorities at Defendant's facilities. *Collier Depo.* at 35-36.

As outlined above, Defendant had no significant evidence to justify its decision to believe Michelle Kline's version of events. Witherspoon's denial of the accusations had been consistent throughout the entire process, the video footage relied on by Jill Schaade did not support or rebut anything related to the situation, and the only other employee Defendant relied on was April Lombardo, who knew nothing of the alleged situation other than what Kline told her. The 2004 Letter of Reprimand also should not have factored into any credibility assessment, as it was significantly dated and had nothing to do with threatening behavior. The letter was wholly irrelevant and nothing more than a convenient excuse to terminate Witherspoon's employment.

Witherspoon had knowledge of the culture of Defendant's predominantly white facilities, he knew "what to do and what not to do to keep his job," and he had no motivation to make the alleged statements. He had a fellow female employee come forward to stand up for him, there had been no issues with his behavior in the preceding eleven (11) years, and there also had been reason to believe Michelle Kline was involved in past sexual misconduct at another of Defendant's facilities. Moreover, based on the testimony of a number of former co-workers, had Defendant sought to question other employees about the events, it would have been informed as to Witherspoon's character as a co-worker and the unlikelihood that he actually said the remarks alleged.

Based on the facts, Defendant's scant investigation was nothing more than a thinly veiled pretext for terminating Witherspoon's employment based solely on his race. Defendant willfully failed to obtain enough facts into the matter to allow itself to make an informed decision and

predicated its decision on Witherspoon's race alone. The evidence produced in this case would cause a jury to reasonably doubt Defendant's explanation surrounding Witherspoon's termination, and therefore its Motion for Summary Judgment as to Plaintiff's race discrimination claim must be denied.

### B. Plaintiff, Isell Witherspoon, was defamed by Defendant's adoption and publication of the false and harmful allegations made against him.

Under Ohio Law, defamation claims fall into two categories: defamation per se or defamation per quo. *Woods v. Capital Univ*., 2009-Ohio-5672, ¶ 28 (Ct. App.). To qualify as per se defamation, the alleged statement must either be: 1) words that import a charge of an indictable offense involving moral turpitude; 2) words that impute some offensive or contagious disease; 3) the words tend to injure a person in his trade or occupation; or 4) in cases of libel only, words that are likely to subject a person to public hatred, ridicule, or contempt. *Id*. "Defamation per se occurs if a statement, on its face, is defamatory," and in cases involving defamation per se, damages are presumed. *Id.* at 29-30. In defamation cases that involve private individuals, an ordinary negligence standard is applied, and the plaintiff "must show by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Fuchs v. Scripps Howard Broad. Co*., 170 Ohio App. 3d 679, 691-92 (1st Dist. 2006).

The statements published by Defendant regarding the false allegations made against Mr. Witherspoon certainly qualify as defamation per se, as the statements are undeniably harmful to his trade or occupation. Neither Witherspoon nor his employment with Defendant has the notoriety necessary to be considered a public figure or a matter of public concern, and therefore the above-mentioned ordinary negligence standard applies. Under that standard, Defendant failed to take

reasonable steps to ascertain the truth or falsity of Michelle Kline's allegations before adopting and publishing defamatory statements and terminating Witherspoon's employment.

Defendant adopted Kline's defamatory statements by negligently failing to properly investigate the allegations and then issuing a defamatory Letter of Reprimand in April 2015 for "threatening and intimidating a co-worker." *Exhibit 7*. The nature of the defamatory statements then became knowledge of other individuals in Defendant's facility who had no need to know of that information. Consequently, Plaintiff's character was irreparably damaged and his trade/occupation was negatively impacted. The following excerpt from Candace Brunswick's deposition evidences the publication among other employees:

> Q: What kind of things was assumed or did you hear at the plant?
> A: Well, we heard that there was a confrontation of some sort and that she—I mean this is the story that I got.
> ….
> Q: And what was it that you brought to Jill Schaade's attention?
> A: I told her that I did not see any wrong activity on his part. I—I had—I told her that I had worked with him before in the plant as well as the warehouse and that I was totally shocked by everything that I did hear and that I believe he was getting the raw end of the deal. I just—I had told her that, with his character that I knew of him to be, that I didn't think that it should have happened the way it did.

(*C. Brunswick Depo.* pp. 10-11)

Witherspoon was clearly harmed following Defendant's reckless investigation and/or willful ignorance of evidence supporting his story. Defendant's termination of Witherspoon's employment adopted Kline's defamatory statements and communicated to other individuals in the facility and elsewhere that Witherspoon had a character for violence. As a result, Witherspoon's character has been irreparably harmed. A reasonable jury could conclude that Defendant was negligent in ascertaining the truth or falsity of the allegations against Witherspoon before terminating his employment and publishing that information to other individuals who had no need

of it, and therefore Defendant's Motion for Summary Judgment on Plaintiff's defamation claim must be denied.

### C. Defendant's conduct, by publishing that Mr. Witherspoon had a character for violence and then terminating his employment, was "extreme and outrageous".

In order to establish a claim for intentional infliction of emotional distress, the plaintiff must prove: 1) the defendant intended, or should have known, that its actions would cause serious emotional distress; 2) that conduct was so extreme and outrageous as to go beyond all possible bounds of decency and could be considered completely intolerable in a civilized community; 3) those actions proximately caused psychological injury to the plaintiff; and 4) the plaintiff suffered serious mental anguish that no reasonable person could be expected to endure. *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App. 3d 40, 61 (2009).

Defendant contends that Witherspoon's termination is the sole reason for his claim of intentional infliction of emotional distress. However, it is that termination, in conjunction with the publishing of defamatory statements and a letter of reprimand, that constitute "extreme and outrageous" behavior. Not only did Defendant terminate Witherspoon based solely on his race following a recklessly scarce investigation into the truth of allegations against him, but it also adopted and published false and defamatory statements about his character. Defendant terminated Witherspoon's employment and then conveyed to other individuals in the facility, and with a reasonable certainty future employers, that he had a character for violence and is not suitable for any work environment.

Defendant knew or should have known that firing someone while simultaneously labeling them as a violent person, following such an "investigation" would cause any reasonable person to suffer extreme emotional distress.  The termination and simultaneous defamation of being labeled

a violent individual could certainly be considered "extreme and outrageous," and those actions proximately caused Witherspoon to suffer extreme psychological distress.

A reasonable jury could conclude that Defendant's conduct in terminating Witherspoon's employment following its "investigation," while at the same time labeling him as violent and dangerous, could constitute "extreme and outrageous" behavior. Accordingly, its Motion for Summary Judgment regarding the claim of intentional infliction of emotional distress must also be denied.

## CONCLUSION

For the reasons stated herein, this Court should issue an order denying Defendant's Motion for Summary Judgment, in its entirety.

Respectfully submitted,

*/s/ Robert A. Pecchio*
Robert A. Pecchio, Esq. (0025282)
Andrew J. Wides, Esq. (0091633)
**THE LAW OFFICES OF
THE ROBERT A. PECCHIO CO., L.P.A.**
2305 E. Aurora Rd., Suite A-1
Twinsburg, OH 44087-1940
Phone: (330) 963-6600
Fax: (330) 963-6650

*Attorneys for Plaintiff*