# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ISELL WITHERSPOON, | ) | CASE NO. 5:16-cv-978 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant General Electric Company ("defendant" or "GE") for summary judgment on plaintiff's complaint. (Doc. No. 21 ["Mot."].) Plaintiff Isell Witherspoon[1] ("plaintiff" or "Witherspoon") opposed the motion (Doc. No. 25 ["Opp'n"]), to which defendant replied (Doc. No. 28 ["Reply"]). For the reasons that follow, defendant's motion is granted.

## I. BACKGROUND

This case was removed by the defendant from the Portage County Court of Common Pleas on the basis of this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 1 (Notice of Removal).) The basic factual background of this case is not in dispute.

---

[1] Plaintiff is sometimes referred to as "Shawn" in the evidentiary materials submitted by the parties in support of their respective positions on summary judgment.

## A. Witherspoon's Employment History

GE hired Witherspoon as a finishing operator in its Ravenna Lamp Plant in 1995. In 2004, he was terminated for poor performance, violation of safety rules, disruptive behavior, and inappropriate behavior involving female co-workers. (Doc. No. 21-2 (Affidavit of Robert Mullins ["Mullins Aff."]) ¶ 16 and Ex. B-1 (2004 Letter of Termination); Doc. No. 17-1 (Deposition of Isell Witherspoon ["Witherspoon Dep."] at 179-81[2] (105-16[3]).) GE later changed Witherspoon's termination to a suspension, permitted him to return to work, and issued a written letter of reprimand on November 8, 2004. (Mullins Aff. ¶ 16 and Ex. B-2 ["2004 Letter of Reprimand"]; Witherspoon Dep. at 183-86 (121-36).) GE's letter of reprimand imposed a number of conditions related to Witherspoon's return to work and informed him that:

> any future occurrences of similar actions or other acts of a serious nature will subject you to further disciplinary action up to and including discharge. If you receive another letter of reprimand during your employment with GE, you will be immediately terminated.

(2004 Letter of Reprimand.)

Witherspoon does not recall every detail of the events of 2004. He does not dispute, however, that he was terminated by GE for various reasons and then permitted to return to work in 2004 subject to certain conditions. (*See* Witherspoon Dep. at 179-86 (105-36).)

---

[2] All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

[3] The deposition transcripts have been filed such that each page identification number generated by the Court's electronic filing system contains four transcript pages. The parenthetical references to page numbers for deposition citations refer to the deposition transcript page number.

In January 2014, the Ravenna Lamp Plant closed, and GE offered those employees placement at another GE facility. Witherspoon began working at GE's Ravenna Master Distribution Center ("Ravenna MDC") as a warehouse worker in September 2014. (Mullins Aff. ¶ 6.) Employees at the Ravenna MDC are represented by the Industrial Division of the Communications Workers of America, AFL-CIO (the "IUE-CWA" or "union"). (*Id*. ¶ 8.)

**B. Kline's Allegations against Witherspoon**

Michelle Kline ("Kline") began working at the Ravenna MDC in October 2014. (Doc. No. 19-1 (Deposition of Michelle Kline ["Kline Dep."]) at 428 (9-10).) Kline and Witherspoon voluntarily agreed to work together as partners in the warehouse at the Ravenna MDC. (*Id*. at 430 (18-19).) They took work breaks together, but did not socialize outside of work. (*Id*. at 431 (23-24); Witherspoon Dep. at 189-90 (148-50).)

Kline alleges that in late March 2015, Witherspoon made statements to her about suffocating her in plastic, kissing her, attacking her, slicing her throat with a piece of cardboard, and following her home to strangle her. A few days later when she complained of a sore neck, Kline alleges that Witherspoon told her that her neck was sore "because I followed you home and I strangled you while you were sleeping" and "[y]ou should have like a smile on your face because I did something else." (Kline Dep. at 437-38 (45-49).) Kline texted a friend who also worked at the Ravenna MDC, April Lombardo ("Lombardo"), that "[Witherspoon's] creeping me out right now. Come over and say you need me to work in another area, you want me to work with you." (*Id*. at 437 (46), Doc. No. 19-8 (text message).) Lombardo took Kline's text seriously because the two of them had not spoken for over a month—"that's why her text had so much gravity to me because

at the time we weren't talking, and I knew that if she had – reached out to me, that something wasn't right." (Doc. No. 18-1 (Deposition of April Lombardo ["Lombardo Dep."]) at 414 (56).) Kline told multiple about people about Witherspoon's alleged statements, and they encouraged her to report the statements to GE management. (Kline Dep. at 440 (58-59); Lombardo Dep. at 403 (11).)

On March 27, 2015, Kline reported Witherspoon's statements to the Ravenna MDC plant manager, Jill Schaade ("Schaade"). (Kline Dep. at 449 (59); Doc. No. 21-5 (Affidavit of Jill Schaade ["Schaade Aff."]) ¶¶ 5-6.) GE security contacted the local police department and suggested that Kline file a police report, which she did on March 28, 2015. (*See* Kline Dep. at 440 (59-60) and 447 (86); Doc. No. 19-11 (Police Report).)

The same day that Kline reported Witherspoon's alleged comments to Schaade, Schaade met separately with Kline and Witherspoon in the presence of the facilities chief union steward, Scott Moore. (Schaade Aff. ¶ 5; Kline Dep. at 436 (43-44); Witherspoon Dep. at 188 (143-44).) When Schaade spoke to Witherspoon, he denied making any of the statements that Kline said he made, saying that "he always works alone or with 'some girl, Michelle.'" (Schaade Aff. ¶ 7 and Exhibit E-1.) Schaade instructed Witherspoon to go home and not return to work until he was contacted by GE. (*Id*.; Witherspoon Dep. at 188 (144).)

### C. GE's Investigation and Disciplinary Action

In response to Kline's allegations, GE conducted an investigation. (Schaade Aff. ¶ 8.) There were no eye witnesses to the alleged exchanges between Witherspoon and Kline. Schaade examined the facility's security footage for the days March 24-26, 2013 to compare Kline's activities with her statements. Schaade determined that the footage

corroborated Kline's statements that Kline paired up with Lombardo during the workday, and did not interact with Witherspoon as a work partner or on breaks, just as Kline has reported. (*Id*. ¶¶ 8-9.) Schaade also spoke with Lombardo and examined the text messages between Kline and Lombardo to corroborate the information provided by Kline. (*Id*. ¶ 10.) Schaade communicated the results of her review to Robert Mullins, who was the acting manager of human resources. (*Id*. ¶¶ 9-10 and Exhibits E-2 and E-3; Mullins Aff. ¶ 2.)

Mullins conducted his own investigation. He spoke with Kline on March 30, 2015, and separately interviewed Kline and Witherspoon on April 6, 2015 in the presence of an assistant to take notes. (Mullins Aff. ¶ 14.) Witherspoon initially denied familiarity with Kline and making the statements, but as details of their working and taking breaks together emerged, Witherspoon's explanation "shifted to the flat denial that he had made the statements." (*Id*.; Doc. No. 20-1 (Deposition of Robert Mullins ["Mullins Dep."] at 474 (41).) Witherspoon consistently denied making the alleged statements to Kline. Mullins met again with Kline on April 13, 2015, to confirm her allegations and impress upon her the gravity of those allegations. (Mullins Aff. ¶ 15.)

Mullins also reviewed Kline's and Witherspoon's work history with GE. In doing so, he discovered the letter of reprimand GE issued to Witherspoon in 2004. (*Id*. ¶ 16.) Witherspoon recalled that he had been terminated by GE in 2004 and then permitted to return to work. He understood that he had to meet certain conditions to maintain his employment after returning to work in 2004, but was not aware of a letter of reprimand in his file and believed that the issues in 2004 were no longer part of his record upon his transfer to Ravenna MDC. (*Id*. ¶ 17; Mullins Dep. at 468 (20); Witherspoon Dep. at 186 (135-36).) With respect to Kline, Mullins was aware that a number of years ago at a

different GE facility, it was *rumored* that Kline had been involved in a "sexual episode." (Mullins Dep. at 477-78 (56-57).) There is no evidence in the record that Kline was disciplined for the rumored conduct.

Mullins did not meet with Lombardi or Candace (Candy) Brunswick ("Brunswick") as part of his investigation. (Mullins Dep. at 475 (48).) Brunswick, an employee at the Ravenna MDC, told Schaade (who shared the information with Mullins) that, in her view, "Michelle is 'loose'" and "has come on to Shawn for many weeks[,]" and "Shawn is getting a raw deal." (*Id*. at 476-77 (52-53); Doc. No. 20-6; Doc. No. 24-1 (Deposition of Candace Brunswick ["Brunswick Dep."] at 752 (15-16).)

After completing his investigation, Mullins determined that Kline's allegations were credible and, by threatening Kline, Witherspoon had violated the Ravenna MDC's work rules, which warranted a letter of reprimand. (Mullins Aff. ¶ 18; Mullins Dep. at 475 (45-46); Witherspoon Dep. at 308-09 (223-25); Doc. No. 17-6 ["2015 Letter of Reprimand & Termination"]; and Doc. No. 17-16 ["Ravenna MDC Work Rules"] work rules number 11, 27(C)(8), and 27(D)(6)).). Witherspoon's letter of reprimand in 2004 specifically stated that he would be terminated if he received another letter of reprimand, and GE's practice at the Ravenna MDC is to discharge employees who receive two letters of reprimand unless the union and GE negotiate a different resolution. (Mullins Aff. ¶¶ 17-18; Witherspoon Dep. at 195-96 (172-73); 2014 Letter of Reprimand; 2015 Letter of Reprimand and Termination.) As a consequence, Witherspoon was terminated.

The union grieved the letter of reprimand and termination of Witherspoon's employment, but GE denied the grievances and the union did not pursue arbitration. (Mullins Aff. ¶ 19.) The union sought to have GE reinstate Witherspoon under a "last

chance" agreement, but GE declined to do so when they learned that Witherspoon provided false information on his application for income extension by saying that he was "laid off" instead of terminated. (*Id*. ¶ 19; Doc. No. 21-7 (Affidavit of Alex Asiago ["Asiago Aff."]) ¶ 6 and Exhibit G-2.)

### D. Witherspoon's Complaint

Plaintiff, who is African American, asserts three state law claims in his complaint: (1) race discrimination in violation of Ohio Rev. Code § 4112.02; (2) defamation; and (3) intentional infliction of emotional distress. Witherspoon alleges that GE terminated his employment following a "minimal and insufficient investigation into the veracity of the claims against him[,]" and "treated similarly situated employees differently than Plaintiff due to Plaintiff's race." (Doc. No. 1-1 (Complaint ["Compl."]) ¶¶ 21-22.) Witherspoon further alleges that he did not make any of the threatening statements that Kline reported to Schaade, that GE ignored his denials and conducted an inadequate and reckless investigation into the veracity of Kline's allegations before terminating him, and the resulting "public knowledge" regarding the alleged threats and termination was defamatory. (*Id*. ¶¶ 28-32.) Finally, plaintiff alleges that GE's termination based on Kline's allegations without an adequate investigation was outrageous and intentional, causing him severe emotional distress. (*Id*. ¶¶ 35-36.) GE contends that it is entitled to summary judgment on all of plaintiff's claims.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).[4] A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court that demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co*. 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van*

---

[4] Because this matter is before the court pursuant to diversity jurisdiction, the Court applies federal procedural law with respect to defendant's motion for summary judgment, and state substantive law to plaintiff's claims of race discrimination, defamation, and intentional infliction of emotional distress. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

*Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to a genuine factual dispute that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

Summary judgment is required:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

## B. Count one—Race discrimination in violation of Ohio Rev. Code § 4112.02

Ohio Rev. Code § 4112.02(A) provides that:

It shall be an unlawful discriminatory practice:

> For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio courts apply federal case law interpreting Title VII to state employment discrimination claims. *Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992) (applying the burden shifting framework from *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 3 L. Ed. 2d 668 (1973)); *Bucher v. Sibcy Cline, Inc*., 738 N.E.2d 435, 442 (Ohio Ct. App. 2000) (citing *Plumbers & Steamfitters Jt. Apprenticeship Comm. v. Ohio Civ. Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)). Witherspoon has alleged no direct evidence of race discrimination,[5] thus his race discrimination claim is analyzed under the burden shifting framework of *McDonnell Douglas*. *Mitchell*, 964 F.2d at 582 n.4.

Under this burden shifting analysis, the employee has the initial burden of producing evidence of a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (citations omitted); *McDonnell Douglas*, 411 U.S. at 802. If the employee succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant offers a legitimate, nondiscriminatory reason, the burden shifts back to the

---

[5] "Direct evidence is evidence which, if believed, *requires* the conclusion that unlawful discrimination was a motivating factor in the employer's action. '[D]irect evidence proves the existence of a fact without any inferences or presumptions.'" *Pittman v. Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 916 (N.D. Ohio 2006) (emphasis and alteration in original) (quoting *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003) (internal citations omitted)).

employee to prove that the employer's justification is merely a pretext for unlawful discrimination. *Id.* at 253 (citing *McDonnell Douglas*, 411 U.S. at 804).

It is important to remember, however, that "at the summary judgment stage of litigation, courts should not allow 'th[is] burden-shifting analysis [to] obfuscate the appropriate question—whether there exists a genuine issue of material fact.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (quoting *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 813 (6th Cir. 2011)). On a motion for summary judgment in an employment discrimination case, the Court must consider whether there is sufficient evidence to create a genuine dispute of material fact at each stage of the *McDonnell Douglas* burden shifting inquiry. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000); *Rachells v. Cingular Wireless Emp. Servs., LLC,* 732 F.3d 652, 661 (6th Cir. 2013) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.,* 484 F.3d 357, 364 (6th Cir. 2007) (quoting *Cline,* 206 F.3d at 661)).

### 1. Plaintiff's prima facie case of discrimination

Plaintiff can establish a prima facie case of discrimination by showing that: (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position; and (4) that he received different treatment than a comparable (similarly situated), non-protected person, or, that he was replaced by a person outside the class. *Mitchell*, 964 F.2d at 582; *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402-03 (6th Cir. 1999) (citing *Mitchell*, 964 F.2d at 582-83). The parties do not dispute, at least for the purpose of summary judgment, that the first three elements of a prima facie case are satisfied here. Thus, the issue on summary judgment is whether plaintiff has presented sufficient evidence in response to defendant's motion from which a reasonable jury could

conclude that plaintiff has established a prima facie case with respect to the fourth element. The fourth element can be established by "'showing *either* that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employees were treated more favorably than the plaintiff' (emphasis in original)." *Vincent v. Brewer Co.*, 514 F.3d 489, 496 (6th Cir. 2007) (quoting *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1247 (6th Cir. 1995)).

Defendant maintains that plaintiff cannot establish the fourth element of a prima facie case because he cannot identify an employee outside of his protected class that was treated differently for the same or similar conduct. GE further contends that Witherspoon was not replaced with a person outside of his protected class.

### *Plaintiff has failed to establish a genuine dispute of material fact that he received treatment different than a similarly situated person who was not African American*

Plaintiff argues that Kline, who is Caucasian, is comparable to Witherspoon because they have the same supervisor and held similar positions at GE. (Opp'n at 766 (citing *Mitchell*, 964 F.3d at 583).) Plaintiff reasons that both Kline and Witherspoon engaged in the same conduct—communicating to GE their own versions of what transpired between them where there were no other witnesses to the events at issue. Plaintiff contends that "[t]here was considerably more evidence supporting Witherspoon's position," however, Kline was treated more favorably than he was because GE believed Kline and not Witherspoon. (Opp'n at 766.)

Plaintiff does not apply the appropriate standard for determining a comparable employee. "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables'

are similarly-situated *in all respects.*" *Mitchell*, 964 F.2d at 583 (emphasis in original) (citing *Stotts v. Memphis Fire Dep't,* 858 F.2d 289 (6th Cir. 1988)). "In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, a plaintiff and his proposed comparator must have engaged in acts of comparable seriousness." *Moore v. Ohio Edison Co., Inc.*, No. 4:15-CV-1424, 2016 WL 7097631, at *6 (N.D. Ohio Dec. 6, 2016) (internal quotation marks omitted) (quoting *Ortiz v. Hershey Co.*, 580 F. App'x 352, 357 (6th Cir. 2014) (further citation omitted)). "'To make this assessment, a court must look to certain factors, such as whether the individuals . . . have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.*

GE reprimanded Witherspoon for violating work rules by threatening and intimidating Kline, and terminated him because that reprimand was his second. Witherspoon does not contend that Kline made similar threats or statements against him or anyone else, or that Kline was not terminated after receiving two letters of reprimand. Witherspoon has produced no facts from which a reasonable jury could conclude that Kline was similarly situated to him in all respects. Indeed, plaintiff has not identified any GE employee who allegedly made threatening statements but did not receive a letter of reprimand, or who was not terminated after receiving a second letter of reprimand. Thus, Witherspoon has advanced no evidence at all from which a reasonable jury could conclude that he has established a prima facie case of race discrimination on the basis that similarly situated individuals who were not African American received more favorable treatment than he did.

***Plaintiff has failed to establish a genuine dispute of material fact as to whether GE replaced Witherspoon with a person who was not African American***

With respect to the alternative manner by which plaintiff may establish the fourth element of a prima facie case, GE denies that it hired a "specific replacement" for plaintiff, and advances the affidavits of Mullins and Schaade in support of its argument that GE hires on an "ongoing basis" and no "direct replacement" for Witherspoon was hired when he was terminated. (Mot. at 504-05 (citing Mullins Aff. ¶ 7; Schaade Aff. ¶ 3).) In opposition, plaintiff advances GE's interrogatory response number 18, which denies that a specific replacement for Witherspoon was hired, but states that six warehouse workers were hired between April 13, 2015 and April 25, 2016. Five of the six are identified as Caucasian. (*See* Opp'n at 763-64 (citing Doc. No. 25-13 (Defendant's response to plaintiff's interrogatory no. 18)).[6])

The burden of establishing that there is no genuine dispute of material fact always rests with the movant, but after the defendant advances evidence that it believes entitles it to judgment as a matter of law, plaintiff must advance some specific evidence in response to show that there is at least a genuine issue for trial *Celotex*, 477 at 323; *Anderson* 477 U.S. at 250. Plaintiff may do so using any of the evidentiary materials listed in Rule 56(c),

---

[6] According to GE's interrogatory response, the following "warehousers" were hired on or after April 13, 2015:

      04/13/15: Eric James (White)
      04/13/15: Jeff Gaskill (White)
      11/23/15: Margaret Medina (White)
      11/23/15: Fred Parrott (Two or more races)
      04/25/16: Lori Gibson (White)

(Doc. No. 25-13 at 815.)

and the Court must view all the facts and evidence in favor of the non-moving party. *Diebold*, 369 U.S. at 655.

Applying that standard, the Court finds that GE's interrogatory response, without more, does not create a genuine dispute of material fact on the issue of whether GE hires on an "ongoing basis," or whether GE hired a "direct replacement" for Witherspoon. The fact that five of six employees hired during the year following Witherspoon's termination were Caucasian does not address the evidence advanced by GE on the issue of whether GE replaced Witherspoon with a Caucasian. Even drawing all reasonable inferences in plaintiff's favor, GE's interrogatory response constitutes no more than a scintilla of evidence and is insufficient to show that there is a genuine dispute that must be resolved by a factfinder on the issues of whether GE hires on an "ongoing basis" and did not hire a "direct replacement" for Witherspoon. *Garza,* 536 F. App'x at 519.

For all of the foregoing reasons, the Court finds that GE is entitled to judgment as a matter of law on count one because Witherspoon has failed to make a sufficient showing on summary judgment from which a reasonable jury could conclude that he has established a prima facie case of race discrimination. But even if plaintiff had succeeded in making this showing, defendant would still be entitled to judgment on plaintiff's claim for intentional race discrimination for the reasons that follow.

### 2. Defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff

Assuming, *arguendo*, that Witherspoon had succeeded in demonstrating a genuine issue of material fact with respect to his prima facie case, under *McDonnell Douglas*, the burden shifts to GE to articulate a legitimate, non-discriminatory reason for reprimanding and terminating Witherspoon. GE asserts that it reprimanded Witherspoon because his

threatening statements to Kline violated its work rules, and terminated him because plaintiff had previously received a letter of reprimand in 2004. (Mullins Aff. ¶¶ 17-18.)

GE's burden is not onerous, and is simply one of production and not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). GE's stated reason for reprimanding and terminating Witherspoon satisfies its burden of production. Under *McDonnell Douglas*, the burden shifts back to plaintiff to show that there is a genuine dispute of material fact as to whether GE's stated reason for reprimanding and terminating Witherspoon is a pretext for discrimination.

### 3. Defendant's reason is not a pretext for discrimination

"Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation . . . at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr.,* 509 U.S. at 515 ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.")).

Defendant maintains that plaintiff cannot show there is a genuine dispute of fact that GE's non-discriminatory reason for terminating plaintiff is pretextual because GE conducted an investigation of Kline's allegations, determined the allegations were credible, issued a reprimand to Witherspoon pursuant to the Ravenna MDC's work rules 27(C)(8)

and (D)(6), and terminated Witherspoon as a consequence because of a prior reprimand. In opposition, plaintiff argues that GE's deficient investigation, and racial bias at its facilities, are sufficient on summary judgment to establish that a reasonably jury could find that GE's stated reasons for terminating him are a pretext for intentional discrimination.

### *Plaintiff's evidence of race discrimination at GE*

Plaintiff believes race was the real reason for his termination. In Witherspoon's opinion, if similar allegations were made by an African American woman, they would have been given less weight by GE than Kline's allegations and he would not have been terminated. Yet, Witherspoon is not aware of any African American woman who complained that someone had made violent or threatening remarks against her. (Witherspoon Dep. at 165 (49), 168 (62-64).)

As another example of alleged race discrimination at GE, Witherspoon testified that an African American woman who worked at a GE facility other than the Ravenna MDC, Stacy Davis, was passed over for a promotion in favor of a Caucasian woman. Plaintiff admits, however, that he knows nothing about the credentials of the Caucasian woman who received the promotion. (*Id*. 165 (50-51).) Witherspoon also testified regarding an incident he heard about secondhand concerning a confrontation between a Mexican woman and African American man where neither employee was terminated as a result. Witherspoon acknowledges, however, that he was told neither individual had prior letters of reprimand in their files. (*Id*. at 167 (58-60).)

As further evidence of alleged race discrimination at GE, Witherspoon testified about an African American man named "Robinson" who was allegedly treated less favorably by GE than a Caucasian woman for the same conduct related to "some sick role

thing" that Robinson "was trying to do on this Disability Act thing." But plaintiff admitted that "in plants they gossip" and "those are just things that go past you, you hear them." (*Id.* at 174 (86-87).)

Notwithstanding a lack of any examples of race discrimination at GE consisting of more than rumor, speculation, and second-hand information, plaintiff testified that it was "common knowledge" that there was race discrimination at GE's facilities. (*Id.* at 174 (85).) None of the alleged incidents of race discrimination identified by plaintiff took place at the Ravenna MDC. With respect to that facility, Witherspoon testified that he was not there long enough to know of anyone being treated less favorably because their race. (*Id.* at 166 (56).)

The only incident involving plaintiff where a "black person lost" took place at the Ravenna Lamp Plant. Plaintiff describes the incident as follows:

> **Q.** Okay. Tell me about that. We're talking about the Ravenna Lamp Plant, correct?
> **A. I was doing my job and the machine adjuster hollered at me and went in the office. And I was questioned on what I was doing.**
> **Q.** Who was the machine adjuster who hollered at you?
> **A. Ernie.**
> **Q.** Do you know Ernie's last name?
> **A. No.**
> **Q.** What was Ernie's race?
> **A. White.**
> **Q.** Were you disciplined?
> **A. No.**
> **Q.** Were you terminated?
> **A. No.**
> **Q.** Were you demoted?
> **A. No.**
> **Q.** Are there any other situations at the Ravenna Lamp Plant where you think, quote, the black person lost or was treated badly or differently because of their race?
> **A. No.**

(*Id.* (55-56).)

Plaintiff's perception of racial bias at GE facilities based on incomplete information and hearsay is not competent evidence on summary judgment. *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (citation omitted). With respect to the incident described by plaintiff at the Ravenna Lamp Plant involving Ernie, there is no evidence that race played any role, and even if it did, there is no evidence that Ernie was involved in the decision to reprimand and terminate plaintiff at the Ravenna MDC in 2015. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161-62 (6th Cir. 1990) (statements of intermediate level management officials are not probative of discrimination where the ultimate termination decision was made by an upper-level official) (citation omitted).

### *Alleged deficiencies in GE's investigation*

After GE's investigation, Mullins determined that Kline's allegations were credible because her account of the incident was consistent and Schaade had corroborated surrounding events, while there were inconsistencies in Witherspoon's account with respect to his familiarity with Kline, although he always denied making the statements. (Mullins Dep. at 467 (13-14), 469-70 (23-28), 474 (41).) Plaintiff does not dispute that there were no eye witnesses to this "he said—she said" matter.

Plaintiff argues that GE's reasons for believing Kline over plaintiff are not convincing because Mullins admitted that he could not determine a motive for Witherspoon to make the alleged statements to Kline, and Mullins was aware of rumored sexual misconduct by Kline at another GE facility a number of years earlier. (*Id*. at 477-78 (56-57).) At the time of GE's decision, Mullins was also aware that Kline had asked Witherspoon to be her work partner and they took work breaks together, that Kline had

asked Witherspoon to go to church with her, and that Kline had given him her phone number. (*Id.* at 470 (25-28).) Plaintiff also points out that GE's investigation did not include the opinion of former co-workers, who described Witherspoon as peaceful, respectful, and kind, and who had never heard Witherspoon speak in the manner described by Kline.[7] According to plaintiff, defendant cannot justify its decision to believe Kline's version of events while ignoring and/or not seeking exculpatory evidence concerning those allegations. Given the deficiencies in GE's investigation, and race discrimination at GE facilities, Witherspoon argues that a jury could reasonably doubt GE's non-discriminatory explanation for termination, and his prima facie case is sufficient to support an inference of discrimination at trial. (Opp'n at 767 (citing *Jones v. Honda of Am. Mfg., Inc.*, No. 3:13-CV-167, 2015 WL 1036382, at *13 (S.D. Ohio Mar. 9, 2015).)

Plaintiff's perceived deficiencies regarding GE's investigation are insufficient to create a genuine dispute of material fact on the issue of pretext. The "honest belief" rule protects employers from a finding of pretext when they have a reasonable basis for taking the adverse employment action at issue. *Moore*, 2016 WL 7097631, at *9 (citing *Mulvin v. City of Sandusky*, 320 F. Supp. 2d 627, 636 (N.D. Ohio 2004) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998))). "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen*, 580 F.3d at 401 (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713-15 (6th Cir. 2007)). "When 'deciding whether an employer reasonably relied on

---

[7] See Opp'n at 763 (citing Doc. No. 25-12 (Affidavit of Marcia Lee) (laid off in April 2009 prior to the events in question); Doc. No. 25-11 (Affidavit of Gail Johnson) (a former GE employee who knew plaintiff); Doc. No. 25-10 (Deposition of David Collier, Jr.).)

the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Lasher v. Medina Hosp.*, No. 1:15CV00005, 2016 WL 455642, at *6 (N.D. Ohio Feb. 5, 2016), *appeal dismissed* (May 4, 2016) (quoting *Smith*, 155 F.3d at 807). The role of the Court is to prevent unlawful hiring practices, not to act as a "super personnel department" or to substitute the Court's judgment for that of management. *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 505 (6th Cir. 2010) (citation omitted); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (citations omitted).

Where an employee is unable to point to a material dispute as to whether the "employer made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). In order to raise a material dispute regarding GE's honest belief, Witherspoon "is required to show 'more than a dispute over the facts upon which the discharge was based.'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Braithwaite,* 258 F.3d at 493-94). It is not even enough for plaintiff to show that GE was wrong about the truth of the facts upon which it based its decision—he must come forward with evidence showing that GE's error was "'too obvious to be unintentional.'" *Id*. at 286 (quoting *Smith,* 155 F.3d at 807).

The crux of plaintiff's pretext argument is that if GE had conducted a more thorough investigation, it would have found Witherspoon to be credible, not Kline. But the "honest belief" rule does not require that GE interview every witness that plaintiff believes it should have interviewed or to conduct a perfect investigation. *Moore,* 2016 WL 7097631, at *11 (citing *Seegar*, 681 F.3d at 286). Nor does the rule require GE's decision to be correct or free of error. *Chen,* 580 F.3d at 401. Plaintiff's view that GE made an incorrect credibility determination is not relevant to the analysis. *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007) ("An employee's opinion that he did not perform poorly is irrelevant to establishing pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor."); *Hedrick*, 355 F.3d at 462 (citations omitted).

The Court's inquiry is limited to determining whether GE gave an honest explanation of its decision to reprimand Witherspoon. *Hedrick*, 355 F.3d at 462. Witherspoon's arguments that Kline's allegations are false, that GE's investigation was one-sided and flawed, and that GE should have determined that he was more credible than Kline, are insufficient under the "honest belief" rule to create a triable issue of fact on the issue of pretext. *See Larocque v. City of Eastpointe*, 245 F. App'x 531, 537 (6th Cir. 2007) (Plaintiff's argument that defendant's investigation was untimely, one-sided, and a cover-up for retaliation does not demonstrate that the employer did not "honestly believe" the non-discriminatory reason for its adverse employment action.) (citing *Balmer v. HCA, Inc.,* 423 F.3d 606 (6th Cir. 2005)). Witherspoon has put forth no evidence that creates a genuine dispute of fact that GE did not "honestly believe" the non-discriminatory reason for its

decision to reprimand and terminate plaintiff, or upon which a jury could reasonably reject GE's non-discriminatory explanation for its actions. *Braithwaite,* 258 F.3d at 494.

Accordingly, even if plaintiff had successfully established an issue of fact with respect to his prima facie case, defendant would still be entitled to summary judgment on count one because plaintiff has failed to advance evidence from which a reasonable jury could conclude that GE's legitimate non-discriminatory reason for termination was a pretext for race discrimination.

### C. Count two—Defamation

"The essential elements of a defamation claim are as follows: (1) the defendant made a false statement; (2) that was defamatory in nature; (3) and published to a third party; (4) the unprivileged publication of that statement caused injury to the plaintiff; and (5) the defendant acted with the requisite degree of fault." *Badri v. Huron Hosp.*, 691 F. Supp. 2d 744, 769 (N.D. Ohio 2010) (citing *Akron–Canton Waste Oil v. Safety–Kleen Oil Servs.,* 611 N.E.2d 955, 962 (Ohio Ct. App. 1992)). In count two, plaintiff alleges that, as a result of GE's "reckless and insufficient investigation and termination of Plaintiff, the defamatory materials and statements regarding Plaintiff's termination became public knowledge. The defamatory materials will also become knowledge to any future employer through whom Plaintiff seeks to achieve employment." (Compl. ¶ 32.)

Defendant seeks summary judgment on plaintiff's defamation claim on the grounds that the allegedly false statements were made by Kline, who is not a party to this litigation. In the absence of evidence that GE made a false and defamatory statements, defendant argues that plaintiff cannot establish the essential elements of his defamation claim and GE

is entitled to judgment as a matter of law. In support, defendant offers plaintiff's deposition testimony:

> **Q.** You have claimed in your lawsuit that you have a claim for defamation alleging that GE defamed you. Do you know what the basis is for that claim?
> **A. The defamation came from Michelle Kline which led to my termination from General Electric.**
> **Q.** So your allegation is that Michelle Kline defamed you?
> **A. Yes.**
> **Q.** How did Michelle Kline defame you?
> **A. By the false allegations.**
> **Q.** Are you alleging that GE defamed you? Or only Michelle Kline?
> **A. Michelle Kline said it. GE believed it or did not believe it, but I know the end result was my termination from her defamation.**
> **Q.** What did GE say that was defamatory about you?
> **A. The letters from her. Her statements that they kept.**
> **Q.** So the letters from Michelle Kline – or the statements from Michelle Kline making the allegation she did against you, that's what you think are defamatory?
> **A. Yes.**
> **Q.** Did GE write anything that you believe is defamatory?
> **A. I didn't really get much letters -- well, I got letters from GE through my attorney, but the basis of it is Michelle Kline's accusations, is what led to my termination. Had she not defamed me, I would still be working there.**
> **Q.** Are you aware of GE making any false statements about you?
> **A. GE kept me in the dark about the whole situation.**
> **Q.** So is the answer to my question no?
> * * *
> **A. No.**

(Witherspoon Dep. at 170 (70-72) (bold text in original).)

In opposition, plaintiff contends that GE defamed him by negligently failing to determine the truth or falsity of Kline's allegations, and by adopting those allegations and publishing the defamatory 2015 letter of reprimand and termination for "threatening and intimidating a co-worker," which became known by other individuals at the Ravenna MDC "who had no need to know of that information." (Opp'n at 770-71.) In support of the publication element of a defamation claim, plaintiff advances the deposition testimony of Brunswick:

> Q: What kind of things was assumed or did you hear at the plant?
> **A: Well, we heard that there was a confrontation of some sort and that she—I mean this is the story that I got.**
> * * *Q: And what was it that you brought to Jill Schaade's attention?
> **A: I told her that I did not see any wrong activity on his part. I—I had— I told her that I had worked with him before in the plant as well as the warehouse and that I was totally shocked by everything that I did hear and that I believe he was getting the raw end of the deal. I just—I had told her that, with his character that I knew of him to be, that I didn't think that it should have happened the way it did.**

(Brunswick Dep. at 751(10-11) (bold text in original).)

Even assuming that Kline's allegations were false and they were adopted by GE, Witherspoon has failed to advance evidence that creates a genuine dispute of fact with respect to an essential element of defamation under Ohio law—unprivileged publication to a third party. The testimony of Brunswick cited by plaintiff does not establish that GE published Kline's allegations to individuals "who had no need to know" of Witherspoon's alleged threats to Kline. Indeed, Brunswick's testimony actually shows that GE kept the matter "very quiet."

> **Q.** Okay. After Shawn was terminated -- well, first of all, did you come to learn why he was terminated?
> **A. I can't really say that I heard exactly what happened because it seemed like the situation was kept very quiet. There was not very much discussion about it amongst, I would say, the people who knew what**

**happened, so I only know what was assumed, I would say, what we heard.**

\* \* \*

 **Q.** And you knew it was important, if you had any information, that that was the time to share it, correct?

**A. I didn't have any specifics. I was not a witness and I did not have specifics.**

**Q.** So you were generally -- you were just talking to Ms. Schaade about your knowledge of Mr. Witherspoon and your work with him and your knowledge of his character?

**A. Right. Right.**

**Q.** Okay. At that time, when you spoke to Jill Schaade, did you know what the allegations were that Michelle Kline made against Mr. Witherspoon?

**A. The actual allegations? I -- I don't know that anybody knew the actual allegations. I mean, like I said, I believe that they kept everything so quiet. The only thing we talked about was, you know, whatever we thought had happened.**

(*Id*. at 751(10) and 753 (19-20) (bold text in original).)

To the extent that plaintiff contends GE's 2015 letter of reprimand and termination constitutes publication of a defamatory statement, the letter was addressed only to Witherspoon from Schaade with a copy to Mullins. Plaintiff has advanced no evidence that the letter was published to anyone else.

Moreover, the letter from Schaade to Witherspoon regarding the reasons for his reprimand and termination constitutes a communication between an employer and employee protected by a qualified privilege. *Dean v. Norfolk S. Ry. Co.*, No. 4:13-CV-2622, 2015 WL 1423456, at \*6 (N.D. Ohio Mar. 27, 2015), *aff'd* (Apr. 6, 2016) (a communication made in good faith on a matter of common interest between an employer and an employee is generally protected by qualified privilege) (citations omitted); *Lane v. City of Pickerington*, 588 F. App'x 456, 468 (6th Cir. 2014) (defamation claim based on false information in defendant's letter terminating plaintiff's employment protected by qualified privilege). For reasons previously discussed, there is no evidence in the record

from which a reasonable jury could conclude that GE's letter to Witherspoon was not made in good faith, or was made with actual malice, either of which would constitute an exception to qualified privilege. *Lane,* 588 F. App'x at 468-69 ("In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. . . . The phrase 'reckless disregard' applies when the publisher of defamatory statements acts with "a high degree of awareness of their probable falsity" or when the publisher in fact entertained serious doubts as to the truth of his publication.") (citing *Jackson v. City of Columbus,* 883 N.E.2d 1060 (Ohio 2008)); *Dean*, 2015 WL 1423456, at *6 (same).

Plaintiff has advanced no evidence that creates a genuine dispute of fact that GE defamed him, or published any defamatory statement about him in an unprivileged manner. Thus, plaintiff cannot establish all of the essential elements of his defamation claim and summary judgment is appropriate on count two of plaintiff's complaint. *See Celotex,* 477 U.S. at 322-23.

## D. Count three—Intentional Infliction of Emotional Distress

Plaintiff claims that GE's actions of communicating Kline's allegations that plaintiff made threatening and intimidating remarks, and terminating his employment without an adequate investigation into the truth of those allegations, constituted extreme and outrageous conduct that was intended to cause, and did cause, plaintiff severe emotional distress. (Compl. ¶¶ 35-38.)

To prove intentional infliction of emotional distress in Ohio, plaintiff must show that: (1) GE intended, or should have known, that its actions would result in serious emotional distress; (2) GE's conduct was so extreme and outrageous as to be "beyond all

possible bounds of decency" and "utterly intolerable in a civilized community"; (3) the conduct was the proximate cause of plaintiff's injuries; and (4) the mental anguish suffered by plaintiff is of such a serious nature that "no reasonable man could be expected to endure it." *Pyle v. Pyle,* 463 N.E.2d 98, 103 (Ohio Ct. App. 1983) (internal quotation marks and citations omitted). "Ohio courts have held that a party must act in an extreme and outrageous manner, a manner in which if the story is told would extract the exclamation of 'outrageous!' from a reasonable person." *Hall v. United Labs, Inc.,* 31 F.Supp.2d 1039, 1044 (N.D. Ohio 1998) (citing *Pyle,* 463 N.E.2d at 103).

In opposing GE's motion on count three, plaintiff argues that this claim is not based only on his termination from GE, but also on GE's adoption and publication of Kline's false and defamatory statements about his character following a "recklessly scarce investigation" into the truth of the statements, which were conveyed to other individuals at the Ravenna MDC and, with "reasonable certainty" to future employers that he had a violent character. (Opp'n at 772.) GE argues that plaintiff's intentional infliction of emotional distress claim consists entirely of the same allegations upon which plaintiff asserts his discrimination and defamation claims and, thus, is insufficient to support a claim for intentional infliction of emotional distress. (Mot. at 511-12; Reply at 827-28.)

Defendant is entitled to judgment as a matter of law on count three of plaintiff's complaint because plaintiff has not established on summary judgment that there is a genuine dispute of material fact with respect to all of the elements of his claim. As an initial matter, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action

for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

Second, even if GE knew that its investigation, and subsequent reprimand and termination of Witherspoon, would cause plaintiff distress, GE is entitled to investigate alleged violations of its work rules and impose discipline in accordance with those rules, and it is not outrageous for GE to do so. *See Johnson v. Gen. Motors Corp.*, No. 01-CA22-2, 2001 WL 1913820, at *9 (Ohio Ct. App. Oct. 17, 2001) (labor relations analyst's actions in interviewing an employee and investigating allegations against him by another employee "as a matter of law, was not 'outrageous' or ['] beyond all possible bounds of decency'" because those actions were within analyst's authority and part of his duties to resolve problems in the plant and investigate complaints); *Vitanza v. First Nat'l Supermarkets, Inc.*, No. 62906, 1993 WL 226576, at *8 (Ohio Ct. App. June 24, 1993) ("[A]n employer is not liable for an employee's emotional distress if the employer does no more than 'insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress[.]'") (quoting *Hanley v. Riverside Methodist Hosp.*, 603 N.E.2d 1126, 1132 (Ohio Ct. App. 1991)); *Neal v. Hamilton Cnty.,* 622 N.E.2d 1130, 1137 (Ohio Ct. App. 1993) (employer's actions  concerning written reprimand, reassignment of duties, and delivery of pre-disciplinary conference notice were taken in accordance with personnel manual for purpose of assuring payroll office ran efficiently, and were not outrageous or intended to cause emotional distress). Plaintiff does not claim, or offer any evidence, that GE's investigation of the alleged violations of its work rules and subsequent disciplinary action was not conducted in compliance with those rules and

the collective bargaining agreement; indeed, Witherspoon's union unsuccessfully grieved GE's disciplinary action but did not pursue the matter to arbitration.

Finally, with respect to the last element of an intentional infliction of emotional distress claim, plaintiff alleges that he has experienced severe and permanent emotional distress and serious psychological injuries as a consequence of GE's conduct. (Compl. ¶¶ 37-38.) For purposes of an intentional infliction of emotional distress claim, the mental anguish suffered must be very serious—"beyond trifling mental disturbance, mere upset or hurt feelings." *Paugh v. Hanks,* 451 N.E.2d 759, 765 (Ohio 1983). The emotional injury must be "both severe and debilitating[ ]" such that a reasonable person "would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* (citations omitted). "[S]ome examples of serious emotional distress . . . include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.* (citation omitted).

At his deposition, Witherspoon testified that he was diagnosed with anxiety in 2012 and prescribed alprazolam. (Witherspoon Dep. at 157 (18-19).) Plaintiff testified that the amount of alprazolam he takes has been increased as a consequence of the emotional distress caused by defendant in 2015. (*Id*. at 171 (74-75).) That said, plaintiff does not take alprazolam every day—just during stressful times. (*Id*. at 198 (181), 217 (257-58).) Since being terminated from GE, Witherspoon has worked at various assignments through temporary staffing agencies, and continues to attend church regularly. (*Id*. at 171 (75-76) and 218 (261-63.) The record is devoid of any evidence that plaintiff has suffered the kind of severe and debilitating emotional distress as a consequence of the events surrounding

his termination from GE that is required to support an intentional infliction of emotional distress claim.

Based on the undisputed record, no reasonable jury could conclude that GE's conduct rose to the level of extreme and outrageous conduct that went beyond all bounds of human decency so as to be utterly intolerable in a civilized society, or that plaintiff suffered the kind of emotional distress that made him unable to cope or function as a consequence. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim in count three for intentional infliction of emotional distress.

## III. CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment on all counts of plaintiff's complaint is granted.

**IT IS SO ORDERED**.

Dated: April 14, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**